EXHIBIT 2

## Non-Disclosure Agreement

AGREEMENT made as of this 22nd day of July, 2021, by and between Marquis Who's Who Ventures LLC, a Delaware Limited Liability Corporation, with offices located at 350 RXR Plaza, Uniondale, New York, 11556, on the one hand, and RevenueBoost LLC, a Connecticut Limited Liability Corporation, with a location at 7 Blackhouse Rd, Trumbull, CT 06611, on the other hand.

In consideration of the covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1. RevenueBoost LLC (hereinafter, the "Receiving Party") understands that Marquis Who's Who Ventures, Inc. and its subsidiaries and affiliates (hereinafter, collectively, the "Disclosing Party") has disclosed or may disclose certain proprietary and/or confidential financial information in connection with a possible transaction between the Disclosing Party and the Receiving Party (the "Proposed Transaction") concerning the Disclosing Party, its business and/or products and services whether or not such information is designated or marked as "confidential", "proprietary" or otherwise (including, without limitation, profit and loss statements, balance sheets, payroll documentation, etc.) which to the extent previously, presently or subsequently disclosed to the Receiving Party is hereinafter referred to as "Confidential Information" of the Disclosing Party.

"Confidential Information" also includes the manner in which information may be combined with other information or synthesized or used by the Disclosing Party and the fact that discussions or negotiations are taking place concerning the Proposed Transaction and the terms, conditions and other facts with respect to such transaction.

2. (a) The Receiving Party agrees that Confidential Information of the Disclosing Party shall:

(i) be used solely for the purpose of evaluating the Proposed Transaction, internally, and not for any other purpose whatsoever; (ii) not be copied; (iii) be kept in a safe place and the Receiving Party agrees to exercise reasonable precautions to protect such Confidential Information (including, without limitation, all precautions the Receiving Party employs with respect to its Confidential Information); and (iv) be kept confidential by the Receiving Party and the Receiving Party agrees not to divulge any such Confidential Information or any information derived therefrom to any Person, except that the Receiving Party may disclose such Confidential Information, or portions thereof, to those of the Receiving Party's employees who need to know such information for the purpose of evaluating the Proposed Transaction (it being understood that those employees will be informed of the confidential nature of the Confidential Information and the obligations assumed hereunder and will only be given access to same if they consent to abide by such obligations).

For purposes hereof, the term "Person" means any natural person, corporation, division of a corporation, partnership, trust, joint venture, association, firm, company, limited liability company, estate or unincorporated organization.

Without granting any right or license, the Disclosing Party agrees that sections 2(a)(i), (ii), (iii) and (iv) shall not apply to any information after five (5) years following the disclosure

thereof or any information that the Receiving Party can document (1) is or becomes generally available to the public other than as a result of a disclosure or improper act or omission of the Receiving Party or any of its employees, (2) was in the Receiving Party's possession or known by it prior to receipt from the Disclosing Party, (3) was rightfully disclosed to the Receiving Party by a third party without restriction, or (4) is provided by the Disclosing Party to third parties without restriction.

    (b) The Receiving Party may make disclosures required by court order provided the Receiving Party (i) uses reasonable efforts to limit disclosure and to obtain confidential treatment or a protective order, (ii) has given the Disclosing Party prior written notice of any such court order and (iii) has allowed the Disclosing Party sufficient and reasonable time to respond to court process and to participate in the court proceedings.

3.     Immediately upon (i) the decision of either party not to enter into the Proposed Transaction or (ii) at the request of the Disclosing Party at any time, the Receiving Party will promptly return to the Disclosing Party all of the Confidential Information of the Disclosing Party and all documents and media containing any such Confidential Information and all copies thereof in its possession, custody or control, and permanently delete all electronic records containing any such Confidential Information. The Receiving Party understands and acknowledges that nothing contained herein requires the disclosure of any Confidential Information of the Disclosing Party, which shall be disclosed, if at all, solely at the option of the Disclosing Party.

4.     (a) Each party understands and agrees that no contract or agreement with respect to the Proposed Transaction shall be deemed to exist unless and until a binding transaction agreement has been executed by and delivered to each of them, and no legal or other obligation of any kind whatsoever exists with respect to such transaction by virtue of this Agreement or any other written or oral expression with respect to such transaction, except in the case of this Agreement for the matters specifically agreed to herein. The parties further agree that neither party can be held liable for expenses incurred or opportunities foregone by the other in reliance on this Agreement or the Proposed Transaction.

    (b) It is further understood and agreed that nothing contained in this Agreement, nor the fact that Confidential Information of the Disclosing Party is disclosed to the Receiving Party, shall be construed as a grant of or as an intention or commitment to grant to the Receiving Party any right, title or interest in and to the Confidential Information of the Disclosing Party or any products or processes encompassed thereby or improvements or developments thereof or intellectual property rights relating thereto.

5.     It is further understood and agreed that no failure or delay by the Disclosing Party in exercising any right, power or privilege hereunder will operate as a waiver thereof. Any waiver of any of the provisions of this Agreement will not be effective unless made in writing and signed by the party against whom the enforcement of such waiver is sought. A waiver given in any case shall only apply with respect to that particular act, omission or breach, and shall not be effective as to any further or subsequent act, omission or breach, regardless of whether they be of the same or similar nature.

6.     The Receiving Party acknowledges and agrees that the Confidential Information of the Disclosing Party is proprietary to and is a valuable, unique asset of the Disclosing Party and that any disclosure or use thereof in violation of the provisions of this Agreement will cause irreparable harm and loss to the Disclosing Party. As such, the Receiving Party acknowledges and agrees that it shall be responsible for its employees compliance with the provisions of the Agreement and that money damages alone are not a sufficient remedy for any breach or

threatened breach of this Agreement by the Receiving Party and/or its employees and that the Disclosing Party shall be entitled to commence an action for specific performance and/or injunctive relief as remedies for any such breach or any threatened breach, and shall not be required, in any such action, to post any bond on account of any injunctive or preliminary relief sought. Such remedies shall not be deemed to be the exclusive rights or remedies for a breach of this Agreement but shall be in addition to all other rights and remedies available at law, in equity or otherwise to the Disclosing Party, it being the intention that all such rights and remedies are cumulative and not exclusive.

7. The Receiving Party understands that the Disclosing Party makes no representation or warranty as to (i) the accuracy or completeness of the Disclosing Party's Confidential Information or (ii) that the Confidential Information disclosed by the disclosing party will meet the requirements of the Receiving Party and that such information when combined with other data or when used in a particular manner will be sufficient or suitable for the Receiving Party's purposes. The Receiving Party agrees that neither Disclosing Party nor any of its directors, officers, shareholders, employees, agents or representatives shall have any liability or obligation to the Receiving Party resulting from the use of the Disclosing Party's Confidential Information by the Receiving Party or any of its employees, including without limitation Receiving Party's claims for indemnification for third party claims arising from Receiving Party's use of the Confidential Information.

8. This Agreement shall only apply to disclosures made within five (5) years from the date hereof. However, without granting any right or license, all obligations hereunder with respect to any restrictions on use and disclosure of the Confidential Information made within such period will survive and continue during the period for non-disclosure specified in section 2(a).

9. This Agreement shall be governed by, enforced and construed in accordance with the domestic laws of the State of New York, without giving effect to principles of (i) conflicts or choice of law or (ii) comity of nations.

10. Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms or provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction. Further, to the extent that any terms or provisions hereof are deemed invalid, void or otherwise unenforceable, but may be made enforceable by amendment thereto, the parties agree that such amendment may be made so that the same shall, nevertheless, be enforceable to the fullest extent permissible under the laws and public policies applied in any such jurisdiction in which enforcement is sought. This Agreement supersedes all prior discussions, negotiations and writings and constitutes the entire agreement between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by an instrument in writing signed by the party against whom enforcement is sought. Neither party shall have the right to assign or delegate any of its rights or obligations hereunder without the prior written consent of the other party.

IN WITNESS WHEREOF, each of the parties has caused a duly authorized officer to execute and deliver this Agreement, all on the day and year set forth above.

| MARQUIS WHO'S WHO VENTURES LLC | REVENUEBOOST LLC |
|---|---|
| By: _____ | By: _____ |
| Name: Randy Narod | Name: Osvaldo Paca Jr |
| Title: President | Title: CEO |
| Date: 7/22/2021 | Date: 07/22/2021 |