UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X     Case No.:
MARQUIS WHO'S WHO VENTURES LLC,                                             23-CV-01043(RPK)(JMW)

                                    Plaintiff,

                    -against-

REVENUEBOOST LLC,

                                    Defendant.

-----------------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

---

CERTILMAN BALIN ADLER & HYMAN, LLP
*Attorneys for Plaintiff*
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
516-296-7000

Of Counsel:
Douglas E. Rowe, Esq.
Joshua Feldman, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

STATEMNET OF FACTS ...................................................................................... 1

ARGUMENT ............................................................................................................. 6

    POINT I ................................................................................................................. 6

    STANDARD FOR GRANTING A PRELIMINARY INJUNCTION ................................ 6

    POINT II ............................................................................................................... 7

    PLAINTIFF DEMONSTRATES A LIKELIHOOD OF SUCCES ON
    THE MERITS OF ITS CLAIMS ............................................................................... 7

      A. Plaintiff is Likely to Succeed on the Merits of its
         Federal Trademark Infringement Claim ......................................................... 7

      B. Plaintiff Likely to Succeed on the Merits of its
         Unfair Competition Claim ............................................................................ 10

      C. Plaintiff is Likely to Succeed on the Merits of its
         Breach of Contract Claim ............................................................................ 10

      D. Plaintiff is Likely to Succeed on the Merits of its
         Breach of the Implied Covenant of Good Faith
         and Fair Dealing Claim ............................................................................... 11

      E. Plaintiff Likely to Succeed on the Merits of its
         Defend Trade Secrets Act Claim .................................................................. 11

        1. Plaintiff's Customer List
           Constitutes a Trade Secret ...................................................................... 12

      F. Plaintiff is Likely to Succeed on the Merits of its
         Misappropriation of Trade Secrets Claim ..................................................... 14

      G. Plaintiff is Likely to Succeed on the Merits of its
         Conversion Claim ........................................................................................ 16

      H. Plaintiff is Likely to Succeed on the Merits of its
         Unjust Enrichment Claim ............................................................................ 17

I. Plaintiff Likely to Succeed on the Merits of its
Claim for Restraints and Injunctive Relief .................................................................17

POINT III ....................................................................................................................... 18

PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THIS COURT
DOES NOT GRANT INJUNCTIVE RELIEF ................................................................. 18

POINT IV ....................................................................................................................... 19

THE BALANCING OF THE EQUITITES TILTS
HEAVILY PLAINTIFF'S FAVOR ................................................................................. 19

CONCLUSION .............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Am. Cyanamid Co. v. Campagna Per Le Farmacie in Italia, S.P.A.*,
  847 F.2d 53 (2d Cir. 1988) .................................................................................................. 7

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004) .............................................................................................. 17

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) .................................................................................................. 6

*ExpertConnect, L.L.C. v. Fowler*,
  No. 18 CIV. 4828 (LGS), 2019 WL 3004161 (S.D.N.Y. July 10, 2019) ...................... 12, 13

*Flexible Technologies., Inc. v. World Tubing Corp.*,
  910 F.Supp. 109 (E.D.N.Y. 1996) ...................................................................................... 18

*FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd.*,
  730 F.2d 61 (2d Cir. 1984) ................................................................................................. 18

*Gen. Sec., Inc. v. Commercial Fire & Sec., Inc.*,
  No. 17 Civ. 1194, 2018 WL 3118274 (E.D.N.Y. June 25, 2018) ....................................... 14

*Great Lakes Reinsurance (UK) SE v. Herzig*,
  413 F. Supp. 3d 177 (S.D.N.Y. 2019) ................................................................................. 11

*Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*,
  581 F. Supp. 3d 460 (E.D.N.Y. 2021) ................................................................................... 7

*Hudson Hotels Corp. v. Choice Hotels Int'l.*,
  995 F.2d 1173 (2d Cir. 1993) ............................................................................................. 15

*Intertek Testing Servs., N.A., Inc. v. Pennisi*,
  2020 WL 1129773 (E.D.N.Y. Mar. 9, 2020) ...................................................................... 12

*Juicy Couture, Inc. v. Bella Int'l Ltd.*,
  930 F. Supp. 2d 489 (S.D.N.Y. 2013) ............................................................................... 8, 9

*Kirschner v. Bennett*,
  648 F. Supp. 2d 525 (S.D.N.Y. 2009) ................................................................................. 16

*Lumex, Inc. v. Highsmith*,
  919 F. Supp. 624 (E.D.N.Y. 1996) ................................................................................... 6, 18

*Medidata Sols. v. Veeva Sys.*,
    No. 17 Civ. 589, 2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018) .............................................. 14

*N. Atl. Instruments, Inc. v. Haber*,
    188 F.3d 38 (2d Cir. 1999)................................................................................................. 12, 15

*Natsource LLC v. Paribello*,
    151 F. Supp. 2d 465 (S.D.N.Y. 2001)....................................................................................... 6

*Overseas Direct Imp. Co. v. Fam. Dollar Stores Inc.*,
    929 F. Supp. 2d 296 (S.D.N.Y. 2013)..................................................................................... 10

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961)...................................................................................................... 8

*Quezada v. BP Products North America, Inc.*,
    2006 WL 3837720 (E.D.N.Y. Dec. 1, 2006) ............................................................................ 6

*RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*,
    156 F. App'x 349 (2d Cir. 2005)............................................................................................. 10

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    588 F.3d 97 (2d Cir. 2009)........................................................................................................ 8

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)...................................................................................................... 18

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*,
    No. 15 Civ. 211, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016)............................................. 13

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999)........................................................................................................ 6

*Two Hands IP LLC v. Two Hands Am., Inc.*,
    563 F. Supp. 3d 290 (S.D.N.Y. 2021)...................................................................................... 9

*Virgin Enterprises Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003)...................................................................................................... 7

*Webcraft Techs., Inc. v. McCaw*,
    674 F.Supp. 1039 (S.D.N.Y. 1987) ......................................................................................... 16

**State Cases**

*Contempo Communications, Inc. v. MJM Creative Services, Inc.*,
   182 A.D.2d 351, 582 N.Y.S.2d 667 (1st Dep't 1992) .............................................................. 15

*Tavolacci*,
   135 A.D.2d 704, 522 N.Y.S.2d 604 (2d Dep't 1987) ............................................................... 15

*U.S. Reins, Corp. v. Humphreys*,
   205 A.D.2d 187, 618 N.Y.S.2d 270 (1st Dep't 1994) ............................................................. 15

**Federal Statutes**

15 U.S.C. § 1114(1) ...................................................................................................................... 7

18 U.S.C. § 1836(b)(1) ............................................................................................................... 12

18 U.S.C. § 1839(3) .................................................................................................................... 13

**Other Authorities**

H.R. Rep. No. 114-529 ................................................................................................................ 12

Restatement of Torts, Section 757 .............................................................................................. 15

## PRELIMINARY STATEMENT

Plaintiff Marquis Who's Who LLC ("Plaintiff" or "Marquis") moves this Court for emergency injunctive relief to prevent Defendant Revenueboost LLC ("Defendant" or "Revboost") from causing irreparable harm to Marquis's business through their use and disclosure of misappropriated trade secrets, and by sending communications to Plaintiff's customers and potential customers infringing on Plaintiff's Marquis Who's Who trademarks.

## STATEMENT OF FACTS

Plaintiff respectfully refers to the accompanying Affidavit of Kristine McCarthy (the "McCarthy Aff.") for a complete recitation of the facts relevant to Plaintiff's instant motion, which are also set forth herein.

On or about April 18, 2006, Marquis was granted United States Trademark Registration Number 3,082,435 for the trademark "Marquis Who's Who," in International Class 035, for the following goods and services: providing an on-line database featuring biographical directories ("Marquis Who's Who Mark"). *See* Ex. 1 at p. 1-5. On or about October 3, 1995, Marquis was granted United States Trademark Registration Number 1,923,629 for the trademark "Marquis", in International Class 016, for the following goods and services: biographical directories ("Marquis Mark"). *See id.* at p. 6-11. On or about August 20, 1974, Marquis was granted United States Trademark Registration Number 991,399 for the trademark "Who's Who", in International Class 016, for the following goods and services: publications in the nature of directories published from time to time ("Who's Who Mark"). *See id.* at p. 12-22. On or about May 17, 1949, Marquis was granted United States Trademark Registration Number 509,921 for the trademark "Who Was Who in America", in International Class 016, for the following goods and services: publication in the nature of a directory published from time to time ("Who Was Who Mark"). *See id.* at p. 23-33.

On or about June 11, 1940, Marquis was granted United States Trademark Registration Number 378,389 for the trademark "Who's Who in America", in International Class 016, for the following goods and services: publications in the nature of a directory published from time to time ("Who's Who America Mark") (the Marquis Who's Who Mark, the Marquis Mark, the Who's Who Mark, the Who Was Who Mark, and the Who's Who America Mark collectively the "Marquis Who's Who Marks"). *See id.* at p. 34-42. Plaintiff's Marquis Who's Who Marks are currently active, and Plaintiff is the owner of the Marquis Who's Who Marks, which are valid and subsisting United States Trademarks.

Defendant Revboost is engaged in the business of targeted email marketing. In or about July 2021, Plaintiff and Defendant Revboost discussed the prospect of entering into a business relationship pursuant to which Defendant Revboost was to conduct email marketing on behalf of Plaintiff. In furtherance of their discussions, on or about July 22, 2021, Plaintiff and Defendant Revboost entered into a Non-Disclosure Agreement (the "Non-Disclosure Agreement"), pursuant to which Revboost agreed to protect Plaintiff's confidential information and trade secrets. *See* Ex. 2. Regarding Plaintiff's confidential information and trade secrets, Revboost agreed in the Non-Disclosure Agreement that it would use said information "(i) solely for the purpose of evaluating the Proposed Transaction, internally, and not for any other purpose whatsoever" that Plaintiff's confidential and proprietary information and trade secrets would "(ii) not be copied; (iii) be kept in a safe place and the Receiving Party agrees to exercise reasonable precautions to protect such Confidential Information (including, without limitation, all precautions the Receiving Party employs with respect to its Confidential Information); and (iv) be kept confidential by the Receiving Party and the Receiving Party agrees not to divulge any such Confidential Information or any information derived therefrom to any Person…"

In or around August 2021, Plaintiff hired Defendant Revboost to conduct an email marketing campaign on Plaintiff's behalf. Despite the parties' agreement and the restrictive covenants contained therein, Defendant Revboost stole, converted, and misappropriated Plaintiff's confidential information, trade secrets, and goodwill for its own personal benefit.

On or about October 24, 2022, through an internet article published on the website Snopes.com, Plaintiff became aware of scam emails being sent to individuals, including Plaintiff's customers, using the Marquis Who's Who Marks (the "Snopes Article"). The Snopes Article detailed that the link contained in the emails referenced therein were "confirmed to be a phishing URL."

The following day, on October 25, 2022, Plaintiff wrote an email to Defendant Revboost regarding the Snopes Article with the subject line "Immediate Action NEEDED" and inquiring as to the origin of the IP address referenced in the Snopes Article (the "Snopes Email"). *See* Ex. 3. In response to the Snopes Email, Defendant Revboost confirmed the email contained in the Snopes Article was "from one of [Revboost's] email partners" and "rest assured there is no phishing or scam emails coming through." *See id.* at p. 1. Upon further investigation, Plaintiff ascertained that the scam emails being sent to individuals, including Plaintiff's customers, originated from Defendant Revboost.

Plaintiff also learned through its investigation that Defendant Revboost was using Plaintiff's email creative template, which included the Marquis Who's Who Marks, in unauthorized and unlawful attempts to phish for and mine customer data on behalf of Plaintiff's competitors, including but not limited to a website named "Exec Connector", located at Execconnector.com. As a result, on or about October 27, 2022, Plaintiff had a phone call with Defendant Revboost in which Plaintiff required that Defendant Revboost comply with certain

3

terms in order for Plaintiff's relationship with Defendant Revboost to continue (the "Terms Email"). *See* Ex. 4. Among other things, the Terms Email required that Defendant "cease and desist using any of our creatives, logos or branding on any other client or partner's campaign", and that Defendant "cease working with all imitators of the Who's Who concept. Especially, but not limited, to Exec Connector." *See id.* at p. 1.

On October 31, 2022, Plaintiff wrote Defendant Revboost an email due to an issue with thousands of repeat opt-outs, including customer complaints as a result of the same. Plaintiff's record of individual email opt-outs is proprietary and confidential information to Plaintiff as it is required for Plaintiff to remain compliant with the law and to ascertain potential customers who no longer wish to be contacted via email. Notwithstanding the foregoing, Defendant Revboost repeatedly failed to comply with Plaintiff's requirements, including but not limited to: (1) the spam email issue, (2) the repeat opt-out issue as detailed hereinabove, and (3) Defendant Revboost's repeated failure to address same and adhere to Plaintiff's ongoing requirements of Defendant Revboost set forth in the Term Email. Plaintiff's relationship with Defendant Revboost was terminated as of November 8, 2022.

On January 25, 2023, an individual by the name of Jose Hernandez received an email that infringes on Plaintiff's Marquis Who's Who Marks, and purportedly signed by "John Sartoris", who is an employee of Plaintiff (the "January 25 Spam Email"). *See* Ex. 5. An individual by the name of Geanina Hernandez, forwarded the January 25 Spam Email to Plaintiff to inquire as to whether it was spam. *See id.* at p. 1. Plaintiff did not send the January 25 Spam Email. The January 25 Spam Email contains the heading "Professional Who's Who", which infringes on the Marquis Who's Who Marks (the "Infringing Mark"), and when clicked points to a website that also infringes on the Marquis Who's Who Marks and identifies Defendant Revboost as its source. *See*

*id.* at p. 1. The January 25 Spam Email also contains language towards the bottom of the email identifying Plaintiff and containing a hyperlink that on its face is that of Plaintiff's but directs to a different website's application page. *See id.* at p. 3. The Terms and Conditions and Privacy Policy Link contained in the January 25 Spam Email also contain links to Plaintiff's Terms and Conditions and Privacy Policy. *See id.*

By the foregoing, the January 25 Spam Email makes clear that Defendant Revboost is sending emails to Plaintiff's customers and prospective customers as part of its efforts to mine their data to sell to Plaintiff's competitors. Plaintiff has received many emails similar to the January 25 Spam Email from its customers notifying Plaintiff of their similar receipt of spam emails sent by Defendant Revboost that resemble or are otherwise identical to the January 25 Spam Email. Plaintiff's records also reflect that Defendant Revboost has been repeatedly accessing Plaintiff's email opt-out information, which contains data on both Plaintiff's customers and the individuals who unsubscribed from Plaintiff's emails and is confidential and proprietary to Plaintiff.

Accordingly, without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its Marquis Who's Who Mark, Defendant Revboost adopted and began using the Infringing Mark in US commerce. The Infringing Mark adopted and used by Defendant is identical and/or confusingly similar to Plaintiff's Marquis Who's Who Marks.

Although Revboost is aware of the restrictions set forth in the Non-Disclosure Agreement, the importance of confidentiality to Revboost, and the fact that the Marquis Who's Who Marks are active United States trademarks, Revboost brazenly chose to ignore their obligations. Given the Defendant's deliberate attempts to disrupt Plaintiff's business, each day that Defendant remains unrestrained, the higher the risk to Plaintiff that Defendant will continue to exploit Plaintiff's

Marquis Who's Who Marks and confidential and proprietary information by sending infringing communications to Plaintiff's customers and others. Plaintiff has developed its client relationships and the value of its Marquis Who's Who Marks through substantial expense, efforts and resources. Unless this Court grants the requested injunctive relief necessary to prevent Defendant from further targeting these clients and potential clients using the Infringing Mark and Plaintiff's confidential and proprietary information and trade secrets, Marquis will suffer irreparable harm.

## ARGUMENT

### POINT I

### STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

It is well settled that to be granted a preliminary injunction, a movant must demonstrate: (1) a likelihood of ultimate success on the merits; (2) irreparable injury absent the granting of the preliminary injunction; and (3) that a balancing of the equities favors the movant's position. *See Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010); *Quezada v. BP Products N. Am., Inc.*, No. 06 CV 5378 SJ, 2006 WL 3837720, at *2 (E.D.N.Y. Dec. 1, 2006).

An injunction should be granted when, as here, the Court's intervention is "essential to protect a party's rights against injuries that would otherwise be irremediable." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999). "The basic requirements to obtain injunctive relief have always been a showing of irreparable injury and the inadequacy of legal remedies." *Id.* at 68; *Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 469 (S.D.N.Y. 2001) (same); *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 627 (E.D.N.Y. 1996) (irreparable harm is perhaps the most important requirement with respect to the granting of a preliminary injunction).

As demonstrated below, Plaintiff has satisfied the requisite standard and is entitled to the temporary restraining order and injunctive relief sought herein.

## POINT II

## PLAINTIFF DEMONSTRATES A LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIMS

### A. Plaintiff is Likely to Succeed on the Merits of its Federal Trademark Infringement Claim

Plaintiff is likely to succeed on the merits of its claim that Defendant's use of the Infringing Mark constitutes a trademark infringement violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). "To establish a Lanham Act infringement claim, plaintiff must establish (1) that 'the plaintiff's mark is entitled to protection', and (2) that 'defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.'" *Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*, 581 F. Supp. 3d 460, 468 (E.D.N.Y. 2021), *quoting Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). "In trademark cases, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm. To meet this burden, [the plaintiff] need[s] only to raise a serious question of likelihood of confusion." *Id.*, *quoting Am. Cyanamid Co. v. Campagna Per Le Farmacie in Italia, S.P.A.*, 847 F.2d 53, 55 (2d Cir. 1988). Here, both tests are satisfied, as the Marquis Who's Who Marks are entitled to protection and Defendant's use of the Infringing Mark has already caused consumer confusion and will continue to cause confusion as to the origin of Defendant's emails to Plaintiff's customers and potential customers.

First, Plaintiff's Marquis Who's Who Marks are entitled to protection. They are well-known throughout the United States and the earliest of the Marquis Who's Who Marks were first used in United States Commerce on or about June 20, 1899. Specifically, the Marquis Who's Who Mark was first used in commerce in 1954 (Ex. 1 at p. 1), the Marquis Mark on or about June 20, 1899 (*id.* at p. 6), the Who's Who Mark on or about August 31, 1970 (*id.* at p. 12), the Who Was Who Mark on or about February 10, 1943 (*id.* at p. 23), and the Who's Who America Mark on or

7

about June 20, 1899 (*id.* at p. 34). The "Who's Who" portion of the Marquis Who's Who Marks in particular are distinctive. "Registered marks are presumptively distinctive, although this can be overcome by showing that a registered mark is generic or is descriptive without secondary meaning." *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 499 (S.D.N.Y. 2013).

As to the second factor, in order to establish a likelihood of confusion, Courts in the Second Circuit have turned to the eight-factor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*[1] "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market" (citation omitted). *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). "The application of the Polaroid test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused" (citation omitted). *Id.* All of the foregoing factors[2] are satisfied here.

First, Plaintiff's Marquis Who's Who Marks are strong, the earliest of which was first used in commerce in 1899 and the latest in 1970. *See* Ex. 1 at p. 1, 6, 12, 23, 34. Second, the Infringing Mark is nearly identical or otherwise confusingly similar to Plaintiff's Marquis Who's Who Marks. *Compare* Ex. 1 at p. 5, 11, 21-22, 33, 42 *with* Ex. 5. *See* Exs. 3, 5. Third, Defendant copied Plaintiff's email content and format almost identically and is using same for the purpose of gathering personal identification information to sell to Plaintiff's competitors. *See* Exs. 3, 5.

---

[1] 287 F.2d 492 (2d Cir. 1961).
[2] Due to the nature of Plaintiff's business, there is no gap between Plaintiff and Defendant to be bridged, and as such the fourth *Polaroid* factor is inapplicable to the case at bar.

Fourth, there is ample evidence of consumer confusion, as evidenced by the Snopes Email[3] (Ex. 3) and January 25 Spam Email (Ex. 5). The Infringing Mark was also adopted in bad faith, as Defendants have admitted its use but have continued to use same despite the Non-Disclosure Agreement (Ex. 2) and Plaintiff's Terms Email (Ex. 4). The quality of Defendant's "product" is also incomparable to the quality of Plaintiff's products under the Marquis Who's Who Marks, as Plaintiff's business is established in its field and has been for over a century, whereas Defendant is sending emails without prior vetting or review to a seemingly random assortment of individuals and selling the data to Plaintiff's competitors.

The final factor, regarding customer sophistication, is "grounded on the belief that unsophisticated consumers aggravate the likelihood of confusion." *Juicy Couture, Inc.*, 930 F. Supp. 2d at 502. "In considering the sophistication of consumers, a court must evaluate the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods" (internal quotations and citation omitted). *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 308 (S.D.N.Y. 2021) Here, though Plaintiff's customers are renowned, notable individuals, some may not have the sophistication to discern the difference between the Infringing Mark and Defendant's accompanying use of Plaintiff's exact copy in their email campaign from Plaintiff's legitimate use of the Marquis Who's Who Marks. This factor weighs in favor of Plaintiff.

For those reasons, Plaintiff is likely to succeed on the merits of its Federal Trademark Infringement Claim.

---

[3] Capitalized terms herein, to the extent not otherwise defined, have the same definitions as set forth in the Complaint.

**B.** **Plaintiff is Likely to Succeed on the Merits of its Unfair Competition Claim**

Plaintiff has also demonstrated a likelihood of success on the merits of its unfair competition claim. The elements of an unfair competition claim are that "(1) either actual confusion or a likelihood of confusion; and (2) bad faith on the part of the defendant." *Overseas Direct Imp. Co. v. Fam. Dollar Stores Inc.*, 929 F. Supp. 2d 296, 311 (S.D.N.Y. 2013). As set forth above, Plaintiff has shown that there is both actual confusion and a likelihood of future confusion between Plaintiff's legitimate Marquis Who's Who Marks and Defendant's Infringing Mark. *See, e.g.,* Ex. 5. Defendant has also acted in bad faith as Defendant's use of the Infringing Mark breaches the Non-Disclosure Agreement between the parties. *See* Ex. 2. As such, Plaintiff has a likelihood of success on the merits on its unfair competition claim.

**C.** **Plaintiff is Likely to Succeed on the Merits of its Breach of Contract Claim**

Plaintiff also has demonstrated a likelihood of success on the merits of its breach of contract claim. "The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350–51 (2d Cir. 2005). Here, the Non-Disclosure Agreement constitutes a valid and binding contract. *See* Ex. 2. Plaintiff performed pursuant to the Non-Disclosure Agreement by, *inter alia*, providing Defendant with access to its confidential and proprietary information, including email opt-out information and customer data, in accordance with same. Defendant then breached the Non-Disclosure Agreement by wrongfully utilizing and disseminating Plaintiff's confidential and proprietary information to Plaintiff's competitors, and wrongfully infringing on Plaintiff's Marquis Who's Who Marks through Defendant's use of the Infringing Mark. Defendant's aforementioned acts have damaged and continue to damage Plaintiff's reputation and

the value of its Marquis Who's Who Marks. For those reasons, Plaintiff has a likelihood of success on the merits of its breach of contract claim.

**D.** **Plaintiff is Likely to Succeed on the Merits of its Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

Plaintiff also has a likelihood of success on the merits of its breach of the implied covenant of good faith and fair dealing claim. "To state a claim for breach of this covenant, a plaintiff must plead that (1) the defendant owes the plaintiff a duty to act in good faith and conduct fair dealing; (2) the defendant breached that duty; and (3) the breach of duty proximately caused the plaintiff's damages." *Great Lakes Reinsurance (UK) SE v. Herzig*, 413 F. Supp. 3d 177, 183 (S.D.N.Y. 2019). Here, Defendant owed Plaintiff a duty to act in good faith and fair dealing with respect to the Non-Disclosure Agreement. Defendant breached that duty by using Plaintiff's creative – namely, the words and design of its emails to customers and potential customers (*see, e.g.,* Exs. 3, 5) to mine data that Defendant then sold to Plaintiff's competitors. This breach of the implied covenant of good faith of fair dealing by Defendant proximately caused Plaintiff's damages – which include to its reputation and the value of its Marquis Who's Who Marks – that have accrued and will continue to accrue absent the imposition of the preliminary injunctive relief Plaintiff seeks herein. Accordingly, Plaintiff has a likelihood of success on the merits of its breach of the implied covenant of good faith and fair dealing claim.

**E.** **Plaintiff is Likely to Succeed on the Merits of its Defend Trade Secrets Act Claim**

Plaintiff is likely to succeed on the merits of its claim that Defendant's improper use of Plaintiff's proprietary and confidential list of customer email opt-out information, in violation of the Non-Disclosure Agreement, constitutes a violation of the Defend Trade Secrets Act ("DTSA"). "To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly

allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret."
*ExpertConnect, L.L.C. v. Fowler*, No. 18 CIV. 4828 (LGS), 2019 WL 3004161, at *3 (S.D.N.Y.
July 10, 2019); *see also* 18 U.S.C. § 1836(b)(1); *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 2020
WL 1129773 at *340 (E.D.N.Y. Mar. 9, 2020) ("[t]o succeed on a claim misappropriation of a
trade secret under the DTSA, a plaintiff must show that the trade secret was: (A) acquired by a
person who knows or has reason to know that the trade secret was acquired by improper means;
or (B) disclosed by another without express or implied consent.").

### 1. Plaintiff's Customer List Constitutes a Trade Secret

It is well settled that customer lists constitute a trade secret under the DTSA. *See
ExpertConnect, L.L.C. v. Fowler* (finding that "client lists and client preferences, contract details,
expert lists and performance criteria" were trade secrets under the DTSA); *see also Intertek Testing
Servs., N.A., Inc. v. Pennisi*, 2020 WL 1129773 at *340 ("Indeed, in enacting the DTSA, Congress
specifically indicated that '[e]xamples of trade secrets include confidential formulas,
manufacturing techniques, and customer lists.'" *citing* H.R. Rep. No. 114-529, at 197 [2016]); *N.
Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).

Here, Defendant was on notice, by virtue of the Non-Disclosure Agreement, that Plaintiff
considered its proprietary list of customer email opt-out information to be a confidential matter,
not to be disclosed. Plaintiff invested significant time and money into developing a market for its
product and a list of customers, of which an essential part is the proprietary and confidential list
of customer email opt-out information. Furthermore, Plaintiff's customers and potential
customers, being renowned and accomplished individuals, have an expectation of discretion and
confidentiality of their personal contact information.

Plaintiff has also taken clear steps to safeguard the proprietary and confidential list of customer email opt-out information, in keeping with the requirements of the DTSA. *See* 18 U.S.C. § 1839(3); *ExpertConnect, L.L.C. v. Fowler* at \*1, (agreements stating that employees shall make use of confidential information only "for the purpose of performing his/her duties as an employee, the use of "password protected entry points," and an employee handbook prohibiting employees from "[m]isus[ing]…client lists, expert lists, records, or confidential information of any kind" served as reasonable steps to protect trade secrets); *see also Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, No. 15 Civ. 211, 2016 WL 5338550, at \*6 (S.D.N.Y. Sept. 23, 2016) (making users of trade secrets subject to confidentiality provisions and limitations, and making same accessible only through strictly controlled servers constituted reasonable steps to protect trade secrets). Here, Plaintiff required Defendant to sign the Non-Disclosure Agreement which specifically forbade the disclosure of the proprietary and confidential list of customer email opt-out information. *See* Ex. 2. In fact, Plaintiff requires all vendors with whom it does business to sign a non-disclosure agreement and have individual passwords to access same. McCarthy Aff. at ¶ 35. Plaintiff also requires that its employees sign a confidentiality agreement upon hire and restricts access to Plaintiff's trade secrets to certain employees, each of which has their own login and password to access same and has set up a strict password and internet usage protocol to protect its trade secrets, including the proprietary and confidential list of customer email opt-out information. *Id.* at ¶ 36.

Courts will consider documents to be trade secrets where the value of a company or brand lies within their secrecy or confidentiality. *See ExpertConnect, L.L.C. v. Fowler* at \*5 ("As ExpertConnect's brand value depends on maintaining their clients' and experts' confidences, its reputation is harmed when the trade secrets are divulged. These allegations sufficiently plead that

ExpertConnect's trade secrets are valuable in part because they are secret."); *see also Medidata Sols. v. Veeva Sys.,* No. 17 Civ. 589, 2018 WL 6173349, at * 4 (S.D.N.Y. Nov. 26, 2018) ("The Complaint plausibly alleges that the trade secrets derive independent economic value from being kept secret. The Complaint alleges that Medidata spent a great deal of time and money, $500 million, developing its technology, that Medidata went to great lengths to protect its confidential business information and that Medidata became an industry leader managing the clinical trials of 9 of the 10 top-selling pharmaceutical products in 2015."); *see also Gen. Sec., Inc. v. Commercial Fire & Sec., Inc.,* No. 17 Civ. 1194, 2018 WL 3118274, at *2 (E.D.N.Y. June 25, 2018) ("Plaintiff's customer records, which include contact information, sales history and pricing information, are confidential and not available to the public. Plaintiff maintains customer information on a secure computer accessible only to employees, who are required to use a username and password to access the information.") Here, it is precisely the confidential and discrete nature of the proprietary and confidential list of customer email opt-out information that gives it its value, both to Plaintiff and to its current and prospective customers.

F. **Plaintiff is Likely to Succeed on the Merits of its Misappropriation of Trade Secrets Claim**

As acknowledged in the Non-Disclosure Agreement signed by Defendant, Revboost was given access to Plaintiff's confidential information and that Revboost was not to disclose it or utilize it improperly.

By using Plaintiff's trade secrets to ascertain a list of customers that have previously opted out of communications from Plaintiff, which include Plaintiff's customers, and then using that data to mine customer information from Plaintiff's customers and prospective customers and sell same to Plaintiff's competitors, Defendant has plainly used Plaintiff's confidential information/trade secrets in breach of Defednant's duty not to disclose same.

Generally, to prevail on a claim for misappropriation of trade secrets, New York law requires that a plaintiff demonstrate that it possessed a trade secret, and that the defendant used the trade secret in breach of an agreement and a confidential relationship or duty, or as a result of discovery by wrongful means. *Hudson Hotels Corp. v. Choice Hotels Int'l.*, 995 F.2d 1173, 1176 (2d Cir. 1993). By definition, a trade secret is any "formula, pattern, device or compilation of information used in one's business which confers a competitive advantage over those in similar businesses who do not know of or use it." *U.S. Reins, Corp. v. Humphreys*, 205 A.D.2d 187, 191, 618 N.Y.S.2d 270, 273 (1st Dep't 1994) (*citing* Restatement of Torts, Section 757, Comment b).

Among the factors to be considered in determining whether there is a genuine trade secret is the amount of effort expended in developing the secret matter, the extent of measures taken to safeguard the secret, the extent to which the information is known outside the business and the possible value of the information to competitors. *U.S. Reins*, 205 A.D.2d at 191-92, 618 N.Y.S.2d at 273.

In addition, a confidential list of clients or customers may be a trade secret; if so, the use or disclosure of it by an employee or outside vendor, such as Defendant Revboost, will be enjoined. *North Atlantic Instruments v. Haber*, 188 F.3d 38 (2d Cir. 1999). In *North Atlantic*, the Second Circuit strongly reaffirmed this proposition – the Court affirmed a preliminary injunction barring a former executive from making use – even through casual memory – of a list of specific client contacts that had been compiled by and for the benefit of the former employer. *Contempo Communications, Inc. v. MJM Creative Services, Inc.*, 182 A.D.2d 351, 352-54, 582 N.Y.S.2d 667, 668-69 (1st Dep't 1992); *Support Sus. Assocs. v. Tavolacci*, 135 A.D.2d 704, 705, 522 N.Y.S.2d 604, 605-06 (2d Dep't 1987) (injunction issued based on employee's knowledge of confidential pricing and cost information "because if it were known to competitors, they would be in a position

15

to underbid the plaintiff and consequently to win contracts that the plaintiff was bidding for."). Similarly, in *Webcraft Techs., Inc. v. McCaw*, 674 F.Supp. 1039 (S.D.N.Y. 1987), the court held that even though the identity of plaintiff's customers was "self-evident," a list of such customers was a protectable trade secret because of the "enormous time and effort to develop, including the development of specialized knowledge of the customer's operations and needs"; and the "long, difficult process [it took] to educate and convert a prospective customer to the benefits of [plaintiff's] process." *Id.* at 1045. The court also held that the identity of client contacts and customer preference and pricing information were <u>all</u> protectable trade secrets. *Id.* Thus, the court enjoined the defendant from soliciting or contacting any customer or potential customer about whom she had acquired information while in plaintiff's employ. *Id.* at 1048.

As set forth herein and in the concurrently submitted Complaint and McCarthy Affidavit, Plaintiff has spent a significant amount of time and expense in developing trade secrets/confidential material such as its proprietary and confidential list of customer email opt-out information. Also, as borne out, *supra,* Defendant has clearly unlawfully availed itself of and unlawfully utilized said trade secrets/confidential information.

By virtue of the foregoing, Plaintiff is likely to succeed on its misappropriation of trade secrets claim.

G.     **Plaintiff is Likely to Succeed on the Merits of its Conversion Claim**

Plaintiff also has a likelihood of success on the merits of its conversion claim, the elements of which are "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y.

2009). Here, Defendant has converted Plaintiff's Marquis Who's Who Marks through its use of the Infringing Mark. Defendant has also exercised unauthorized dominion over: (1) Plaintiff's proprietary and confidential information and trade secrets including email opt-out information and customer data, and (2) the words and design of Plaintiff's emails to customers and potential customers. Defendant's use of Plaintiff's aforementioned specifically identified property is to the exclusion of Plaintiff's exclusive rights to the use of same. Therefore, Plaintiff has shown a likelihood of success on the merits of its conversion claim.

### H. Plaintiff is Likely to Succeed on the Merits of its Unjust Enrichment Claim

Plaintiff has a likelihood of success on the merits of its unjust enrichment claim. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Here, Defendant has been enriched at Plaintiff's expense by its unlawful infringement on Plaintiff's Marquis Who's Who Marks by its use of the Infringing Mark, in addition to Defendant's unauthorized use of and profiting from: (1) Plaintiff's confidential information and trade secrets including email opt-out information and customer data, and (2) the words and design of Plaintiff's emails to customers and potential customers. It is against equity and good conscience to permit Defendant to retain the benefits of the foregoing without compensation to Plaintiff for the damages Defendant caused to Plaintiff thereby. As such, Plaintiff has a likelihood of success on the merits of its unjust enrichment claim.

### I. Plaintiff is Likely to Succeed on the Merits of its Claim for Restraints and Injunctive Relief

For all of the reasons discussed herein with respect to why Plaintiff is entitled to temporary injunctive relief including a preliminary injunction, Plaintiff is entitled to permanent injunctive

relief and restraints as requested in its Ninth Cause of Action. As such, Plaintiff is likely to succeed on its Ninth and final Cause of Action.

**POINT III**
**PLAINTIFF WILL SUFFER**
**IRREPARABLE HARM IF THIS COURT DOES NOT GRANT INJUNCTIVE RELIEF**

It is well settled that irreparable harm is presumed where, as here, a trade secret has been misappropriated. *See FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd.*, 730 F.2d 61, 63 (2d Cir. 1984); *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 628 (E.D.N.Y. 1996) (it is "clear" that "irreparable injury is presumed where a trade secret has been misappropriated"). "A trade secret once lost is, of course, lost forever." *FMC Corp.*, 730 F.2d at 63. Accordingly, the unique nature of trade secrets warrants their protection through the liberal use of injunctive relief. *See Flexible Technologies., Inc. v. World Tubing Corp.*, 910 F.Supp. 109, 114 (E.D.N.Y. 1996) (loss of trade secrets constitutes irreparable harm because money damages do not compensate for such loss).

Plaintiffs have also established Defendant's unlawful use of the Infringing Mark and customer confusion resulting from the same that is demonstrated by the January 25 Spam Email. "[W]hen in the licensing context unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is automatic." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004).

Here, if Defendant is not enjoined from its misconduct, Plaintiff is likely to suffer irreparable harm from the misappropriation and use of its trade secrets and confidential information, Defendant's use of the Infringing Mark, and the accompanying loss of goodwill with Plaintiff's customers and potential customers.

## POINT IV

## THE BALANCING OF THE EQUITIES TILTS
## HEAVILY IN PLAINTIFF'S FAVOR

The harm faced by Plaintiff clearly outweighs any harm that Defendant could claim that it would suffer. The injunction sought here would not prevent Defendant from operating, but simply from utilizing Plaintiff's Marquis Who's Who Marks and trade secrets and confidential information – which Defendant never had a right to do. In contrast, the injunction Plaintiff seeks herein, if not imposed, would continue to cause irreparable, immeasurable harm to Plaintiff's Marquis Who's Who Marks and generally to Plaintiff's brand, which Plaintiff has developed over the past century and at significant expense and effort. As such, the balancing of the equities weighs heavily in favor of granting the injunctive relief Plaintiff seeks herein.

## CONCLUSION

For the above reasons, Marquis Who's Who LLC respectfully requests that its application for a temporary restraining order and a preliminary injunction be granted in its entirety, and that Marquis Who's Who LLC be granted such other and further relief as the Court deems just, proper, and equitable.

Dated: East Meadow, New York
February 9, 2023

CERTILMAN BALIN ADLER & HYMAN, LLP

By: _Douglas E. Rowe_ _____

Douglas E. Rowe, Esq.
Joshua Feldman, Esq.
*Attorneys for Plaintiff*
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
drowe@certilmanbalin.com
jfeldman@certilmanbalin.com
Tel: (516) 296-7000